very well okay thanks very much well let's start then with mr. Peters you have seven and a half minutes please proceed thank you your honor the central question in this case is whether Daniel Hernandez presented an imminent threat of harm to officer McBride or any of the bystanders at the scene that requires three separate determinations before there are any shots fired after the determination was made in this case although miss that officer McBride claims that there were threats made to bystanders at the scene by mr. Hernandez there is no other evidence to support that so we have to I think deal with that so someone's skeptically counsel let me let me ask you this given the brevity of time that we have let's just say arguendo that you're correct as a two shots this should probably have gone to the jury nevertheless we have to deal with Casella the Supreme Court case and its impact on Zion which you all have cited Zion has particular facts there and my judgment quite different than here you know you had a situation where someone actually stabbed an perhaps some others walked over to him shot him nine more times and then another officer perhaps the same one that shot the second nine shots kicked him in the head three times here you have a situation that at least the district court described as six shots in six seconds I don't know whether the timing is accurate but it's it's quite different there then we have the issue of Casella has admonished us as a court did before to not look at things at too high a level of generality we have to look at cases that are close enough in terms of the facts that it puts a reasonable officer on notice that he or she is violating the constitutional rights of in this case the victim what I does Zion survive Casella in terms of our analysis in this case I said the federal thing not the state claims but the federal claims if it doesn't why I think Zion survives because it is a situation with both actually both cases present the question of what the officer may or may not do after a suspect has already been shot and is down on the ground and the steps that have to be taken to determine whether it's reasonable to continue shooting once the suspect is down well but he's he's not down and not moving I mean that's that's the thing is he he shot the first two times and then he very clearly tries to get up and then he shot two more times and even then he does not like prone on the ground he sort of swings back and shows his starts to show his back to the officer and that's when she begins to fire the fifth shot and then even in between the fifth and six he turns over and he puts his seems to put his weight almost on his left arm so he's moving a lot so comparing him to someone prone on the ground I'm not sure is is correct well your honor I think movement versus threat are two different things he did indeed move and he was at the point after the second shot was fired he did he did move but there's no evidence that he moved towards McBride that he continued to present a threat to her at he got up into his hands and hands in one knee and I know that the city presents that as being a sprinter stance and I don't think that accurately depicts what was there he did struggle to get to his feet he didn't he never actually got up he was still in a down stance he never moved a foot forward during the entire episode mr. Hernandez remained from 41 to 44 feet away from McBride so I don't think that in terms of a threat it really is any different than Zion well let's let's argue window let's say you're correct that this would normally if there were no qualified immunity be a jury question justice Sotomayor as you know in Casella chastised the majority for doing the very thing that we're talking about here she said normally we should follow the summary judgment standard you have a very good argument that looking at the facts the issue of the last two shots would normally have been given to the jury because there is a material difference of fact but given justice Sotomayor's break she made the chasm between the members of the Supreme Court very evident given that she's not in the majority and given the six-second interval here and the facts being as different as they are between Zion and Casella aren't we bound by Casella to treat Zion basically as high-level advice but that the facts are different enough that there's summary I'm in the qualified immunity here I don't think so and I know your honor is repeating the fact that the shots were spread out over it's about six and a half seconds but there were actually two pauses in there per LAPD policy there were two shots then a pause two more shots and then a pause and two more shots so it is not as if they were six shots in six in quick succession rather as per policy there was a pause in between to reassess let me let me ask you this because we have so little time let's put aside for a moment the federal case if we agree that there are material disputes of fact with respect to the second I mean the final two shots should we send the state causes of action back to the district court to determine whether those causes of action can survive the state immunity statutes I think you would have to but I obviously would think it would be more proper to send the entire case back because I don't think Zion is such a high level of analysis that is inapplicable to this case I think the basic framework of both cases is the same we have a man who has been shot and at that point the question is has the threat ended and even if you look at Plumhoff that talks about the use of deadly force must cease when the threat has ended I know Plumhoff is factually different it is a higher level but Zion is actually particular in the fact that you've got a person shot several times he's on the ground and please continue to shoot okay your time is up let me ask my colleagues whether either has additional questions for what I've got one quick question is Zion the most factually analogous case that you're yes at least the most factually analogous Court of Appeal case there may be more factually analysis district court cases but I suspect they would have less weight in this courts analysis but I don't think Zion is distinguishable and I don't think the district court attempted to distinguish Zion are set on the basis of saying it was too general and therefore inapplicable rather it attempted to factually distinguish the Zion so I think at a minimum the district court erred in its analysis of Zion whether it applied in this case or not court as I said district court did not say Zion doesn't apply district court says Zion is factually distinguishable and actually quoting from the district court vote Zion is clearly distinguishable and then goes into the facts of why he thinks Zion is distinguishable does not say Zion is at too high a level of interest to be applicable to this case just one question even under Casella it's always open to argue that a particular case is an obvious case in which every reasonable officer would have understood that what he or she was doing was unlawful do you contend that with I think yes that a jury would have determined it was unreasonable I also think the same analysis would result after the third and second after the first and second chance and indeed under existing case law in the Ninth Circuit and nationwide I can only think of one case in which the district court found that using deadly force on a person with a bladed weapon at more than 21 feet was reasonable there are numerous district court cases in this court in this district and across the country that 21 feet as seen as a cut off and that is actually the distance which is stated in police manuals as to the distance at which there's a essentially a dividing line between there's an imminent threat and there isn't and the only case which goes longer than average not at the moment of blackout I know there was a distance of 55 feet but in that case it obviously was the fact that the decedent was running because he covered something like 55 feet in three seconds and there is no way that mr. hand Hernandez after being shot could have covered five feet in three seconds I've had enough injuries I've had enough surgeries to know but he had a serious injury then the first two shots he was shot twice in the lower abdomen which is there is nothing to indicate that he could have ever proceeded past that so I think given that he's 40 feet from officer McBride he's been shot twice in the abdomen he never actually moves towards her I think injury would have found it was unreasonable to continue shooting at him okay other questions by my colleagues all right I just had one question I know that it's permissible for counsel to appear by zoom but just personally since you're from Thousand Oaks what made you decide to appear by zoom rather than personally this is the Ninth Circuit we're not a schlock operation actually your honor it was the fact that I had to appear down in the Ninth Circuit last week to get a COVID test and then come back again today which would have essentially taken about six hours of my time and based upon that I concluded that the extra value of I've never thought it was that enormous was worth that expenditure of time so it was really it was it was having to come to the court to have COVID test okay to come in court and argue very well thank you appreciate that all right thank you let's hear for counsel from MLH that way I won't mess up your name I would like to point out yes Kisela versus Hughes is distinguishable on facts it did not change the clearly established law in this circuit that shooting at an incapacitated suspect is in violation of the Fourth Amendment why the facts are distinguishable from our case in Kisela we have a roommate situation officers arrive see Hughes approaching Chadwick her roommate with a large knife and stands towards her holding the knife within six feet officers could have perceived reasonably that she could have assaulted her given the 911 call and the officer resorted to deadly force but stopped after Hughes went down to the ground and shown she no longer posed any imminent threat to Chadwick her roommate officer stopped therefore therefore there was no after that point in time there was no argument for excessiveness of the force so the court if I understand you correctly you're saying that because Zion was on the close that any reasonable officer would have known that what officer McBride did here was a violation of the constitutional rights of the decedent yes and clearly let me also point out another fact in Kisela there was no violation of policy found here we have the board of police commissioners independently finding that shots five and six very violation of policy which puts an officer on notice that she's violating a law and what policy are you citing please that is the training that officer has a duty to recess the threat within the shots the board found that that she failed to recess the threat she failed to stop between the shots and this is the key factor that distinguishes Kisela from us and it does not overrule in any way Zion versus County of Orange because it still is the clearly established law in this circuit not overturned I think you may be misunderstanding the argument no one disputes that Zion is clearly still valid law with respect to the issue of whether or not there was a substantive constitutional violation the question is whether for purposes of qualified immunity Zion violated Kisela's rule that the the rule is defined at too broad a level of generality it covers too many cases with a sweeping set of language rather than the kind of more case specific approach that Kisela and the subsequent cases have stated. Your in terms of you know what is the standard of qualified immunity generally that's a different issue they're looking at the facts here you are basically trying to tell us that look did Kisela as far as I understood from the court's questions did Kisela basically overrule Zion's approach towards qualified immunity it did not because Kisela simply says it says right here the holding that in this case even assuming fourth amendment violation occurred proposition that is not at all evident Kisela was entitled to qualified immunity why because there is no clearly established law that this officer could not have resorted to deadly force under these circumstances but in Zion we have a completely different scenario we still have to look at the morass of the facts as Justice Ginsburg has said or Sotomayor has also said that despite the fact that we have this qualified immunity concept each and every time courts have to look at the morass of facts and facts matter we have facts here that are clearly different from Kisela she was in a completely different she was not a threat after she went down to the ground and that officer stopped shooting we have an officer who fires continues firing when this man is already wounded she sees that this man is wounded struck by training that is very important the district court entirely ignored the board where is this board finding in the record well we attached it your honor it's in the ER it was one of my exhibits to my opposition and if you look at the plaintiffs MLH ER what ER I'll tell you right now let me just look at this index I have a lot of paperwork here I apologize but it is one of my exhibits and by the way which which board is this you're talking about the Board of Los Angeles Board of Police Commissioners okay for the police commission yes and it was my index was its exhibit or the police commissioners exhibit 10 it is er 109 volume 2 er what 109 yes please look at that so did so it are you saying then that because she violated by your standard the police commissioners rule you're saying that basically cuts out any monel liability right because she violated the policy it wasn't that the policy itself encouraged her to do it is that correct well not necessarily we are just your honor a couple of things one thing that she was placed on notice that what she was doing was wrong at the time she shot and killed Daniel Hernandez that's the fact of the matter she was that you need to reassess the front you need to stop between the shots and she admitted in her own administrative interview that I looked and I stopped between the shots I saw you know that she was still popping up she was saying he popped up and continue charging with me not supported by video evidence she knew she was on notice the Supreme Court in its qualified immunity cases talked about the nature of these kinds of cases adrenaline is pumping the life and death thing you've got a short period of time is the standard one where we microscopically examine what officer McBride did second by second is that what we do no you don't do that but we have clearly established law which says terminating a threat does not necessarily mean terminating suspect judge Kaczynski said that in Zion versus County of Orange and most importantly here you're looking at motion for summary judgment standard here this court ignored the dispute of material facts we're not looking at the jury trial they're looking at motion for summary judgment we were not allowed to let this go to the jury if the jury had determined based on video evidence based on expert declarations bystander accounts that the thief and six shots even three and four shots were unreasonable excessive then McBride would not have been entitled to qualified immunity let me ask Mike your time is up let me ask my colleagues whether either has questions for counsel I had a question about the excuse me the discovery issue it seemed to me that the district court focused primarily on the delay from the summer up until February when the first formal discovery was served and while even conceding that there may have been delay on the defendant's side it there was no explanation for the six or no adequate explanation for the six month delay in serving formal discovery that could then trigger the discovery process okay why was that an abuse of discretion in your view well your honor let me explain to you first of all um it is true you need to remember that plaintiff MLH I was representing minor plaintiff MLH came into the case late we were consolidated into the case in September prior to that the parents had served their discovery requests on the city as of July 2021 the city had promised as soon as force investigation records are finished we will produce them to you I was aware of that I had to cooperate with you know that you can't trigger you can't begin the motion to compel process and get the courts involved in resolving anything if you've not served formal discovery and so you were it's nice that they said that but you you need to start the process and that seemed to be the district courts concern that you just took too long to start that process your honor but if I had served my own separate requests without in a consolidated case without cooperating with parents I would have been basically attacked as you know this is this is a redundant why are you producing the same identical requests and moreover you need to remember please your honor this was COVID-19 offices were closed I was operating remotely the city was not even producing to us initial disclosures I did not get the initial disclosures until March 2021 my office was closed I did not have support staff until we had COVID vaccinations in March we did not have full staff operations so as soon as I realized and I was emailing the parents I was cooperating with the complaint is I emailed them multiple times I emailed the city multiple times asking them what is the status on discovery what why are you not enforcing the discovery they were closed nobody was responding so what I did as soon as I realized that nobody's responding then I served February my requests but as a consolidated plaintiff I had to cooperate with everyone I could not just start whatever you know on my own and by the way the city had promised they said we are gonna send you the force investigation records as soon as it's finished and I was assuming that because of COVID they were delayed so everyone if you had seen what was going on with the district court I had multiple cases frozen we had discovery cutoff extended we had trials continuously delayed no one was operating your honor and when I was asking for discovery cutoff extension I asked only for 90 days the court denied it without even looking at how diligently I had to I was working as soon as I realized that nothing is moving there was no here's the thing the burden should not be placed solely on plaintiff for delays why is the city not acting diligently in responding to parents discovery that is the key because the civil rights victims we are at the mercy of the police to produce us records this was a shooting that took place in April 2020 at the height of the pandemic the cases were the parents case was filed in June 2020 our case was filed a month after death was consolidated in September 2020 there was no time for us to you know do more than what we were doing why did the court not look at the diligence by the city they failed to act diligently and furthermore your honor this is not just the discovery we were not even allowed to ask a single question at the deposition of the shooter we were not my client was prejudiced by her inability to ask a single question of the deposition they interrupted they obstructed the deposition after five hours and they walked out on us unilaterally and when I asked the court your honor look what's going on they said tough luck your discovery is finished so basically we were punished for COVID-19 delays we were punished for lack of support staff but the city walked out without any accountability for their lack of diligence in responding to discovery requests and for obstructing McBride's deposition this is the shooter credibility of the shooter is the key we were not able to adequately depose her we were not able to get her personnel files we were not able to get internal review of the incident the court did not even give me time to oppose the MSJ I was filing motions after motion your honor look they gave us contact information of witnesses three weeks before the discovery cutoff percipient witnesses bystanders three weeks before the discovery cutoff your honor is anyone going to be able under these circumstances to review thousands of pages of discovery contact on cooperative witnesses locate them get their depositions done in three weeks no the court did not give us any benefit of the doubt when the city failed to act diligently and more importantly the summary judgment should not have been granted under these circumstances because fact discovery was not question judge Lee do you have any questions of counsel all right thanks very much for your argument we appreciate it on behalf of both the plaintiffs let's hear now from mr. Gilbert to the city of Los Angeles this is Gerald Pierce can I just you were asking for a citation to the record I can provide it for mr. Kitchian okay six er 931 and 932 and those are those are both records indicating that the the officer McBride's fifth and six shots were found to be out of policy thank you thank you all right mr. Gilbert please thank you your honor may it please the court we're talking about a situation that was 20 seconds in total and the time that we've been discussing it is exponentially more than what officer McBride had to determine how to respond to what she perceived as an imminent threat and a threat on her life as the schedule again we got the same problem we have before we don't a lot of time let me just ask you this counsel for both the plaintiffs have pointed out that officer McBride violated as they represented known department policy so putting aside Zion for a minute does the fact that she allegedly violated department policy make a difference in our analysis and whether Kissela controls absolutely it does absolutely not and in fact that was addressed by the Maddox court your honor the city of Los Angeles first of all we're looking at looking at two different legal standards under the Maddox analysis and many of the cases that have looked since the policy is intended to help police departments conduct internal reviews to make sure that its officers are upholding the law and complying with policies oftentimes and especially in Los Angeles the city's policies exceeds standards established under the Fourth Amendment so a determination that a policy violation exists is not necessarily can amount to a violation of the Constitution and and what what would you cite to buttress that position of what you're saying that the fact that the Board of Police Commissioners may have a standard that's in excess of the Fourth Amendment is what controls here what would you cite what case if anything would you cite to support that position so your honor that's actually discussed at page 24 of our brief we have a discussion of Maddox versus City of Los Angeles 792 F second 1408 furthermore it's a subsequent remedial measures the determination by the Board of Police Commissioners is looking at information and evidence which is hearsay and is not after the fact is a subsequent remedial measure the fact that the city may look at it may be relevant to a manel analysis but that is not a claim that's been advanced on appeal rather it's been dismissed furthermore the issues that are looked at are separate and distinct it looks at these cities policies not Fourth Amendment jurisprudence and the determination is made by lay individuals who are not trained in law enforcement but are instead a political commission your honor so it's does not have the same force and effect as if a internal body chief of police or a judicial officer was to make a determination but I don't have the report in front of me but let's just say hypothetically that the board had said look we got the Zion case out there and you've got to have this in mind you cannot shoot when someone's already down and clearly not going to come after you would that make a difference in our analysis absolutely not your honor Zion we need to look at the facts of Zion Zion had three uses of force three distinct separate phases first was nine shots were fired while the suspect was upright once the suspect was on the ground the officer advanced to the suspect while on the ground and fired nine more shots while the suspect was clearly on the ground and the witnesses testimony and the evidence suggested there was a factual dispute as to whether he was in fact moving then after 18 shots have been fired including nine while the suspect was on the ground the officer took a running start ran up and kicked the suspect in the face at that point the suspect was on the ground not moving and there was factual disputes on the record by comparison we have a video here we have a video that shows the suspect continuing to move we are splitting hairs and second-guessing we have the benefit as attorneys and judges of slowing down the video and looking at it in time and again to see what is he moving or not this is exactly what the Graham Court Supreme Court cautioned against and said we do not look at 2020 vision of hindsight you have to look at it in the context of an officer who is struggling to decide life-and-death decisions in real time while an armed suspect is walking towards her an armed suspect that she has been confronted with has been told is threatening himself threatening others who has an edged weapon now there's arguments that it's a box cutter but I'd remind the panel that a box cutter is what caused the 9-11 terrorist attacks and brought down the Empire State Building this is someone who on the record on the video which is undisputed evidence is told multiple times drop the weapon drop the knife drop it and after multiple instructions he continues to advance after the first two shots he continues to get up he is clearly not lying idle on the ground we're talking about between I'm sorry you have a question no no we're talking about a six-second interval at most between shot one and shot six and even watching the video in real time you can see that the suspect continues to move on the ground this is clearly not the same situation of Zion where you have a suspect let me ask a question suppose we rule that there's a factual dispute with respect to whether there's been a Fourth Amendment violation for shots five and six that the jury would have decided that but then we rule that qualified immunity applies because there's no factually analogous case here that would make such violation clearly established so qualified immunity applies then say six months later an incident occurs that's almost identical to this I mean would qualify immunity still apply in that future case that's almost actually identical to this case the problem is that we have to go back to the Supreme Court's jurisprudence and instruction in the Ninth Circuit in particular on defining it clearly established versus too high of a level if the discussion from the court and a published decision came out and said in this instance if there's this many seconds you can have a gap then perhaps this could provide the clarity for future cases that therefore it would not be appropriate on summary judgment but it has to be defined such that and as the Mullinex Court stated every reasonable officer clearly understands that they are violating the Constitution and the that it is beyond debate if we can sit and have a debate about will splitting hairs between a half a second it cannot be argued that that's clearly established to the point that every reasonable officer in the country confronted with the situation would know that what they were doing clearly violated the Constitution we're asking officers to judge life and death decisions in real time without video playback without pausing and that is exactly what the court the trial court looked at and found that when looking at it in real time it does show that she was acting objectively reasonable now we talked about oh let me stop stop you there because there's two different inquiries in the qualified immunity context and one is whether there was a violation and then second whether the law was clearly established and it may be that Casella affects Zion's role at the second inquiry but it doesn't affect it at all at the first and so if we were to conclude that there was a jury issue as to the reasonableness of the force as a matter of a Fourth Amendment violation do you agree that we would then need to vacate the dismissal of the state claims where that dismissal was based solely on there being no violation not necessarily because remember that the jurisprudence between state and federal law looks at whether there's a Fourth Amendment violation or not and under the state laws if she's if Officer McBride is authorized to use lethal force then and at least the first through fourth shots are appropriate then there arguably would be an establishment that she is faced with an imminent threat and under California penal code she is able to defend herself there's been no showing and there's no evidence in the record whatsoever as to which is the fatal shot so we have a situation where the court would be implying evidence and reading something in the record that is not there furthermore but am I wrong in reading the district court's order that the only reason why the state claims were dismissed was the finding that there was no underlying unreasonable use of force I believe that's a correct interpretation of the find that there was a triable issue as to whether there was a reasonable use of force but the qualified immunity nonetheless applied we would still have to vacate the dismissal of the state claims because the first part of that would have been undermined right well your honor I believe the facts would not support that conclusion as far as the initial that's fighting the hype versus one of qualified immunity that there is a tribal issue as to the underlying reasonableness of the use of force if we make that determination don't we have to then vacate the dismissal of the state claims not necessarily it depends on how the decision is made if shots one through four were to adjudicated to be reasonable objectively reasonable and not violate the Fourth Amendment then I think that that supports and continues to support the trial courts holding in dismissal the state court claims because that then authorizes the use if the fifth and six shots are looked at that's a different issue and I don't think that necessarily under federal law that might be something you look at from it from an objective reasonableness standard which I don't necessarily agree with but I don't think that then changes the analysis on shots one through four being appropriate but I think that this we need to remember the pull them off the address the number of shots they contain the Supreme Court has confirmed the number of shots is not an issue it has made clear that an officer may continue firing until a threat has ended well except McBride herself indicated that she was stopping to sort of assess even though it's very brief she to see the reaction to the initial uses if she herself did not describe this as one so your honor I believe you're referencing the administrative interview and I believe that is it first of all an admissible document is a hearsay statement taken out of court it was not deposition testimony on it second of all the video shows a statement is hearsay when she's the defendant your honor it's an out-of-court statement it's compelled under lie Barger it's absolutely qualifies as hearsay if the same testimony been elicited on deposition that would be a different standard but simply making an out-of-court statement that happens to be asked in a compelled statement doesn't excuse the hearsay rules your honor it still has to be a sworn decal up on let me follow up on my colleagues inquiry so let's assume just argue endo that we felt that there was a tribal issue of fact but we concluded that as to the federal claims qualified immunity applies if we send it back the state cause of action to the district court in your judgment are there state immunity statutes that apply and in where there is a claim of excessive force that would in effect provide similar kinds of protection to officer McBride as to the state cause of action so the answer the is maybe and forgive me for the vague discussion but there is a state court analogy that allows officers to be immunized for the enforcement of investigation arrest and law enforcement proceedings however that statute and immunities have limitations when it comes to the situation of force so but because we're talking about a chain of events and a sequence of force where they're potentially shots one through four may be objectively reasonable and hypothetically let's assume five and six or not the I don't know specifically whether established precedent or California law would necessarily covered or not so so basically there there there may be a viable claim or claims on the under the state causes of action if we send it back that I don't I don't know you're saying you agree with it I'm just saying since it's not clear that there are immunity statutes that would cover a claim of excessive force if a jury so found with respect to say shots five and six officer McBride may still be liable under the state causes of action is that fair to say I just I don't feel comfortable agreeing with that because I'm just not we have not had the opportunity to look at exhaustively at the state law on that because those were not issues or arguments that were addressed at the trial court level this with in a total of five and a half to six seconds unless there's any questions further your honor I do believe the factual record is very clear and there are no factual disputes especially given the video questions by my colleague thanks to all counsel for your argument this case is that these cases are always troubling sadly we have a fair number of the Supreme Court has given us some guidance that is interesting but the case just argued is submitted and the court stands adjourned for the day you
judges: SMITH, COLLINS, LEE